FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR - 4 2006

Stephan Harris, Clerk
Cheyenne

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

LINDA BYRD, NANCY EASTON,            )
KORLYNN ANDERSON, THERESA            )
LIVERMORE, and DAVID D. VAN AUKEN,   )
                                     )
        Plaintiffs,                  )
                                     )
    v.                               )     No. 03-CV-248-J
                                     )
QUORUM HEALTH RESOURCES, LLC, a      )
foreign for-profit corporation, and  )
WEST PARK HOSPITAL DISTRICT,         )
d/b/a WEST PARK HOSPITAL,            )
                                     )
        Defendants.                  )

## OPINION STATING FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

THE ABOVE CAPTIONED MATTER came before the Court November 8,

2004 for a non-jury trial.  Counsel at trial for plaintiffs were Jessica Rutzick and

Laurence Stinson; counsel at trial for defendant West Park Hospital were

Michael K. Davis and Kendal Royce Hoopes.  The Court, having duly tried the

issues and being fully advised in the premises, FINDS and CONCLUDES as

follows:

1

## FINDINGS OF FACT

1.  West Park Hospital District is a hospital district organized under Wyo. Stat. § 35-2-401 *et seq.*  West Park Hospital District operates West Park Hospital in Cody, Wyoming.  At time of trial, West Park Hospital had fifteen currently licensed acute beds and an attached nursing care facility.  It also has an emergency room staffed twenty-four hours per day.

2.  Plaintiffs are radiology technologists employed by West Park Hospital. The Hospital has determined that it does not have enough traffic or patient volume at night to justify having around-the-clock staffing of radiology technologists, laboratory technologists, operating room personnel, respiratory therapists, and others.  Technologists in those departments, including the plaintiffs in this case, all take call.

3.  More than one radiology technician is required to be on call at any one time because of the different radiographic studies that must be performed.  All technologists can perform routine x-ray studies, but different technologists are usually required for CT scanning, MRI and ultrasound.  A few technologists are cross-trained so they can take call in different specialties. The technologists are called in when a study is needed, usually to the emergency department. Occasionally, they are called in for the needs of the Intensive Care Unit or

2

medical-surgical patients. Four of the plaintiffs (Anderson, Easton, Livermore, and Van Auken) take x-ray call. These four individuals would be called first if a plain film x-ray was ordered. Plaintiff Byrd, who no longer works for the hospital, took ultrasound call. She would be first called only for ultrasounds ordered after regular business hours, but might be called as backup for the x-ray call person if that person required assistance.

4. While on call, technologists are paid a small hourly amount which has ranged from $1.75 per hour to $2.50 per hour during the years involved in this case. The hospital does not place any restrictions on the employee's activities while on call, although the employee must be able to report to the hospital clean, sober, and able to perform his or her duties within a specified time after being called.

5. Under hospital policy, once plaintiffs arrive at the hospital to take call, they are always paid one and a half times their regular hourly rate of pay, even though they have a work week agreement basing overtime on a seven day week of over forty hours. Employees are paid the one-hour minimum at one and a half times their regular wage for each callback. At the time of trial, plaintiffs earned regular hourly wages between $20.00 and $24.00 per hour.

3

6.  Prior to November 18, 1998, West Park Hospital policy required all employees on-call to report to the hospital within fifteen minutes of being notified.  On November 18, 1998, the hospital call policy was amended to read as follows:

> A nonexempt employee (which includes plaintiffs) is on scheduled, unrestricted call if not required to remain in the work place, but required to keep the organization informed as to where he/she can be reached.  The employee should be able to use his/her time freely, but be able to work within a reasonable period.

See Plaintiffs' Exhibit 1, 2, 4; WPH Ex. 4, 5, 7.

7.  West Park Hospital department heads are free to adopt guidelines to define the term "reasonable time."  At the time of trial, Karen Beemer was the Radiology Department Manager at West Park Hospital.  Beemer decided that, given the urgency of patient needs, a reasonable time under the policy would be fifteen minutes.  Beemer was also influenced by the fact that employees had been able to meet the fifteen minute response time without difficulty in the past.

8.  Many of the radiology department's calls are back to the emergency department, as noted above.  Sometimes a diagnosis cannot be made and treatment cannot be rendered without a radiographic study.  The radiologists at West Park Hospital discourage emergency and other physicians from ordering

4

tests which could be performed during regular business hours to attempt to reduce the number of callbacks.

9.  Both parties have introduced policies from other facilities in the region, at which callback times ranged from fifteen to thirty minutes.  For example, Converse County Memorial Hospital in Douglas has a callback time of 15 minutes (WPH Ex. 12); Hot Springs Memorial Hospital in Thermopolis has a callback time of 15 minutes (WPH Ex. 10); Ivinson Memorial Hospital in Laramie has a callback time of 15 minutes, possibly changing to 20 minutes, and the radiology department is staffed 24/7 (WPH Ex. 11); Powell Valley Healthcare has a callback time of 20 minutes (WPH Ex. 13); Sheridan County Memorial Hospital's callback time is 30 minutes; St. John's Medical Center in Jackson has a callback time of 30 minutes, with the radiology department staffed 24/7; Sweetwater County Memorial Hospital in Rock Springs has a callback time of 30 minutes, with the radiology department staffed 24/7;  and Weston County Memorial Hospital in Newcastle has a callback time of 15-20 minutes.  WPH Ex. 13; see also WPH Ex. 15, 19.

10.  Radiology department employees at West Park Hospital are allowed to carry a pager supplied by the hospital while on call.   Most of the plaintiffs and the technologists not involvedin this suit do use the pager while on call.

While the plaintiffs claimed that the pagers were unreliable at times, the pagers were often used and were, for the most part, an effective way of notifying the on call employee that he or she was needed. Some of the plaintiffs and other department employees carry cell phones as a backup to the pager or notify the hospital when the employee may be in an area in which the pagers will not work well. The hospital replaced its pagers with newer models which have a vibrating feature, text messaging and better reception in 2004. Undisputed testimony at trial indicated that no employee has ever been disciplined for failure to report to the hospital within fifteen minutes when a pager call was not received due to poor reception or operator error.

11. There have been no problems with radiology department employees meeting the fifteen minute call period. It is easily possible to get to the hospital from virtually anywhere in the City of Cody within 15 minutes. No employee has been disciplined for failing to report within fifteen minutes of being called, although plaintiffs claimed that they, and other department employees, have failed to meet the fifteen minute reporting requirement on occasion, and that department employees Laurie Fall and James Blakely live too far from the hospital to consistently report from their homes within fifteen minutes of being called to the hospital. The undisputed testimony indicated that the radiology

6

department supervisor Karen Beemer is not present during call hours and that she would only learn of a delayed response if the West Park Hospital emergency department or other hospital department requesting a study complained to her. She testified that she has received only one complaint about late reporting from a co-worker and on investigation found that the employee had obtained permission to take extra time to report on that occasion.

12.   According to the testimony of West Park Hospital's CEO Douglas McMillan, it would probably not be possible to discipline an employee for reporting in more than fifteen minutes, so long as the employee did in fact report to the hospital within a reasonable period.  McMillan and department manager Karen Beemer both testified that employees would not be disciplined for reporting in after more than fifteen minutes due to road conditions, vehicle mishaps or other circumstances beyond their control.

13.   There is some flexibility in the callback time for radiology technologists.  Technologists routinely call the hospital to find out what led to the call before coming in, because they may not be needed immediately.  Some radiologic studies require various patient preparations before the study can be done.  For example, the patient may need to drink contrast material which must be absorbed prior to a study.  In those situations, it may be as much as an hour

7

from the time the technician is called until the procedure can be done, and the technician is not required to report until the patient is ready.

14.    In other cases, the patient's needs are not emergent, and technologists may call the emergency department to ask for more time to report, which is granted by the ER staff if appropriate.  Both West Park Hospital CEO McMillan and department supervisor Beemer testified that employees had not been and would not be disciplined for reporting in more than 15 minutes if emergency department approval was obtained.

15.    Plaintiffs complained that they are subject to a dress code and appearance standards that make it difficult for them to engage in personal activities given the 15 minute reporting requirement.  Plaintiffs' concerns are not realistic.  The hospital dress code applicable during working hours requires only that employees be clean and presentable (WPH Ex. 28) and there is no dress code governing how employees must dress while on call and not on hospital premises.  Most radiology department employees wear surgical scrubs. Plaintiffs and other employees testified that they could put on scrubs or other clothing replacing or covering otherwise inappropriate attire after arriving and clocking in at the hospital, and that there are numerous places within the facility to wash hands and make oneself presentable.  Employees keep a lab

8

coat with the name tag, radiation badge, and markers in their lockers and can pull these on after clocking in within a very short period of time to achieve a professional appearance. No employee has ever been disciplined for reporting to call in inappropriate attire.

16. Employees are free to trade call as they wish, provided that the person with whom they trade is able to perform the studies required. Employees may also trade just portions of call time, rather than an entire shift. For example, in the past two employees have asked a coemployee to cover for them for short periods so that they could ride horses while on call. Department employees simply note changes on a written schedule made out by department manager Beemer. Beemer's approval is not required unless regular work shifts are altered, or if the person taking call is not qualified to perform all studies that the person he or she is replacing is able to perform.

17. Plaintiffs identified a small number of situations in which they had difficulty trading call. However, the undisputed testimony indicated that they were in fact able to trade call even on those occasions and that call is traded routinely and frequently. Call schedules received in evidence reflect numerous hand-written changes to the schedule. See e.g., WPH Ex. 82.

18. Sometimes employees are called in and must perform multiple

9

studies which keeps them at the hospital for some time late at night. They are permitted, if the department is not too busy, to take part of the following day off to rest. If the employee is too exhausted to function effectively, he or she may take sick leave.

19.  The hospital does not tell employees on call what they can and cannot do with their call time. Plaintiffs admit that they can and have engaged in a wide variety of activities while on call. These activities include watching television, reading, shopping, spending time with friends and family, housework, attending church and Bible classes, going out to dinner, studying for certification classes, riding horses, working on computers and sleeping. They are not required to remain at or within a certain distance from the hospital so long as they are able to meet the fifteen minute callback time.

20.  Department employees who are not parties to this case also engaged in a wide variety of activities while on call. Teresa Schutzman, who is qualified in multiple types of radiology studies and therefore, probably takes call more often than anyone else, ran the concession stand for the Cody Babe Ruth baseball for three summers while taking call at the hospital. Technologists Schutzman, Fall and Stump were able to work out at the Cody Recreation Center, attend church, attend sporting events, dine out, socialize with friends

10

and family, read, study, clean house, do yard work, garden, cook for their families, shop in Cody, eat at the homes of extended family, study for continuing education credits, watch TV or videos, listen to music, do home repair and crafts, have family and friends visit them at their homes, do laundry, walk dogs, spend time with family, attend relative's softball games, basketball games and dance recitals, and even babysit for short periods when parents are reachable by cellular phone or are nearby.  Stump, Fall, and Schutzman each testified that they do not enjoy taking call, but that they can and in fact have engaged in the same personal pursuits on call that they engage in when not on call, subject to the requirement of being able to report to the hospital within fifteen minutes of receiving notice of a callback.

21.  Plaintiffs were aware of the hospital's call requirements before coming to work by virtue of signing position descriptions, reviewing the hospital's policy handbook, and by having been employed previously. See WPH Ex. 43, 45, 48-60, 62-81.

22.  In late May of 2003, plaintiffs and other radiology technologists complained first to their supervisor and hospital CEO Douglas McMillan about the amount of the call pay they received at the time. Pl. Ex. 11. At the time, radiology technologists and others were paid $1.75 per hour while on call, while

11

operating room technologists were paid $2.50. The radiology technologists asked for a raise to $3.00 per hour and that they be paid a two hour minimum for each callback.

23. Hospital CEO McMillan directed the hospital's Human Resource Director Anne Johnson to determine what other hospitals in the region were doing. Johnson contacted hospitals in Wyoming and Montana and found that call pay was between $1.00 per hour and $3.00 per hour at most of those facilities. WPH Ex. 15, 19, 22. On McMillan's recommendation, call pay was increased to $2.50 per hour by the Board of Trustees on September 24, 2003, WPH Ex. 30, 31, 32, but the minimum amount paid for callbacks remained at one hour. WPH Ex. 32. None of the hospitals surveyed reported paying an amount equivalent to or greater than minimum wage to employees taking call.

24. Both parties engaged accountants to analyze plaintiffs' payroll records and determine the frequency of callbacks per shift of call for the years from 2001 through 2003. Defendants' expert, Steve Harker, calculated the overall frequency at .77 callbacks per shift, or less than one callback per shift on average. The averages per plaintiff were as follows:

| Linda Byrd | 0.45/shift |
| Nancy Easton | 0.84/shift |

| | |
|---|---|
| Korlynn Anderson | 0.72/shift |
| Theresa Livermore | 0.78/shift |
| David Van Auken | 1.10/shift |

Harker's figures were audited by plaintiff's accounting expert, Mark Mader, who found them to be accurate.

25. Plaintiff's accountant, Mark Mader, made a calculation which comes to a slightly higher number of average callbacks per shift. In his calculations, at the instruction of plaintiffs' counsel, Mader included situations in which the employee was working a regular shift, receiving regular pay and not call pay and had to stay at the hospital after the shift was complete to finish a study. These instances are not callbacks. The employee remained at the hospital and was paid for that time at his or her regular rate of pay or at overtime rates if he or she had worked over forty hours. The employees involved simply continued to work at either regular wage rates or time and a half, depending on how many hours had accumulated during the work week. Hospital policy specifically provides that "to receive the benefits of call-back pay, the employee should have gone home after the regularly scheduled shift." Moreover, including these stay-overs is not consistent with the purposes of the Fair Labor Standards Act. Employees are being paid at regular or overtime wages during

13

these stay-overs, depending on the number of hours they have worked at the time and have merely put in a longer regular workday for which they are compensated at the appropriate rate.

26.    Testimony also indicated that there were approximately fifty occasions between 2001 and 2003 in which plaintiff Van Auken clocked out and back in again within fifteen minutes.  Mr. Van Auken admitted that he did not leave the hospital on these occasions, but was instead notified of another patient needing a study as he prepared to leave.   These instances are not callbacks, but neither party excluded them from their calculations of callback frequency.

27.    Even using Mader's increased number of callbacks which includes the stayovers, the average number of callbacks for the plaintiffs is still just over one per shift, at 1.06.  The parties agree that call length averaged slightly less than one hour for each callback.

28.    Plaintiffs Anderson, Easton, Livermore and Van Auken take call, on average, one week and one weekend per month.  The total number of callbacks per month, on average, would therefore be less than seven in thirty days.

29.    Plaintiff Byrd rotated ultrasound call with either one or two other employees, depending on the time period.  She had a callback frequency of .45

14

callbacks per shift (excluding stayovers). She would, on average, have also been called back, at most, just seven times in a month in which she shared call with just one other person, because although she was on call more often than the other plaintiffs, she was called back less frequently.

30. Despite his call schedule, plaintiff David Van Auken testified that he has been able to hold employment during times when he is not on call with another hospital in Red Lodge, Montana, and at an orthopedic surgeon's offices in Cody and Powell.

31. The Court has, in a prior order, granted summary judgment in favor of the defendant with respect to plaintiffs' claims regarding the Portal-to-Portal Act, Wyoming Minimum Wage Law, and quantum meruit.

## CONCLUSIONS OF LAW

1. Under the Fair Labor Standards Act ("FLSA"), employees bear the burden of proving by a preponderance of the evidence that they performed work for which they were not properly compensated. Mitchell v. Caldwell, 249 F.2d 10, 11 (10th Cir. 1957).

2. Defendants bear the burden of proving their affirmative defenses that call was performed pursuant to an agreement and that they acted in good faith,

15

if the Court reaches the issue of liquidated damages.

3. Under the FLSA, employees are entitled to additional compensation for working more than 40 hours in a week. 29 U.S.C. § 207(a). The Department of Labor, the federal executive department charged with administering the FLSA, promulgated regulations concerning the compensability of on call periods The regulations provide, in part:

> An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits. Where, for example, a firefighter has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable. On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(d).

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call." An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17.

16

4.  The relevant inquiry focuses on whether the on-call time "is spent predominantly for the employer's benefit or for the employee's." Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). The United States Supreme Court has suggested that if the employee was "engaged to wait" the time would be compensable, but if the employee was merely "wait[ing] to be engaged," it would not be compensable. Skidmore v. Swift & Co., 323 U.S. 134, 137, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). That test requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances. Andrews v. Town of Skiatook, 123 F.3d 1327, 1330 (10th Cir. 1997) (citing Skidmore v. Swift & Co., 323 U.S. 134, 137).

5.  Although taking call does impose some restrictions on the life of an employee taking call, those restrictions will not always cause call time to become compensable. Courts that have dealt with this issue "have consistently held that any imposition created by an on-call policy must be *very significant* to justify compensation for time spent on call but not at work or working. Put differently, although *every* on-call policy creates some imposition on the life of the employee subject to the terms thereof, such time will nonetheless rarely be

17

compensable." Darrah v. Missouri Highway and Transp. Comm'n, 885 F. Supp. 1307, 1311 (W.D. Mo. 1995) (emphasis in original).

6.    In many reported cases dealing with on-call time, call time was held not to be compensable under the FLSA.    See e.g., Reimer v. Champion Healthcare Corp., 258 F.3d 720 (8th Cir. 2001); Dinges v. Sacred Heart St. Mary's Hospitals, Inc., 164 F.3d 1056 (7th Cir. 1999); Andrews v. Town of Skiatook, 123 F.3d 1327 (10th Cir. 1997); Berry v. County of Sonoma, 30 F.3d 1174 (9th Cir. 1994), cert. den.  513 U.S. 1150 (1995); Armitage v. City of Emporia, 982 F.2d 430 (10th Cir. 1991); Bright v. Houston Northwest Medical Center Survivor, Inc., 934 F.2d 671 (5th Cir. 1991), cert. den. 502 U.S. 1036; Burnison v. Memorial Hospital, Inc., 820 F. Supp. 549 (D.Kan. 1993).

7.    The few cases in which on-call time has been deemed to be compensable demonstrate exceptional circumstances which must be present in order for on-call time to be compensable under the FLSA.  See Renfro v. City of Emporia, 948 F.2d 1529 (10th Cir. 1991), cert. dismissed, 503 U.S. 915 (1992) (stating that high frequency of call backs, as many as 13 calls in a shift with an average of four to five per shift, distinguished this case from other cases where on-call time was held to be noncompensable and that firefighters were "engaged to wait" and were eligible for compensation); Cross v. Arkansas

18

Forestry Comm'n, 938 F.2d 912 (8th Cir. 1991) (holding that reasonable juror could find that employees were "engaged to wait" when the employees were required to continuously monitor transmissions of hand-held radios while on call, which prevented them from engaging in many personal activities).

    8.  The principal case in the Tenth Circuit dealing with this issue is Norton v. Worthen Van Service, Inc., 839 F.2d 653 (10th Cir. 1988).  In Norton v. Worthen Van Service, Inc., the trial court denied a claim for recovery of unpaid wages for on-call waiting time and the employees appealed.  The facts in Norton were not in dispute.  Worthen Van operated a van service throughout Wyoming and neighboring states transporting railroad crews to and from their trains.  When the railroad needed a crew transported, a dispatcher telephoned a driver who was responsible for arriving within 15-20 minutes at the Worthen Van facility.  The plaintiffs brought suit seeking back wages, overtime compensation and liquidated damages.  The trial court held that the time spent on call was primarily used for the benefit of the employees, since employees could leave the employer's premises and pursue personal matters which did not interfere with their ability to quickly return to work.

    On appeal, the employees argued that the unpredictability of assignments and the short response time which they were allowed precluded use of the

19

waiting period for their own purposes.  Specifically, the employees noted that

there were a host of personal, private pursuits that could not be accomplished,

such as holding another job, taking children to the park to play, working on

their cars for fear that they might not be able to hear the phone, or inviting

people over to their homes for dinner or to play cards because they must be

available on short notice.  Id., 839 F.2d at 654, n. 1.  The appellate court noted

that testimony showed that although being on call limited their activities, the

employees did have an opportunity to pursue personal business such as

spending time at homes of friends, at church, at laundromats, at restaurants,

at pool halls, and at a local gymnasium.  Id., 839 F.2d at 655.  The Tenth

Circuit held that even though a condition of the plaintiffs' employment placed

a restriction on their personal activities, the trial court had correctly concluded

that the restriction did not constitute working time.

       9.  The district court in Bartholomew v. City of Burlington, 5 F. Supp.2d

1161, 1165 (D.Kan. 1998) stated:

> Courts have considered the following factors in determining
> whether employee plaintiffs had use of on-call time for personal
> purposes:  (1)  whether  there  was  an  on-premises  living
> requirement;  (2)  whether  there  were  excessive  geographical
> restrictions on employees' movements; (3) whether the frequency
> of calls was unduly restrictive; (4) whether a fixed time limit for
> response was unduly restrictive; (5) whether the on-call employees

could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employees had actually engaged in personal activities during call-in time. See Owens v. Local No. 169, 971 F.2d 347, 351 (9th Cir.1992); Burnison v. Memorial Hosp., Inc., 820 F. Supp. 549, 553 (D.Kan.1993).

In addition to the authorities set forth above, it is helpful to consider the following regulations promulgated by the United States Department of Labor concerning the compensability of on-call time:

> An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call". An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17.

> Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work.

29 C.F.R. § 553.221(c).

The critical issue is "whether the employee can use the [on-call] time effectively for his or her own purposes". Bright v. Houston Northwest Medical Center Survivor, Inc., 934 F.2d 671 (5th Cir. 1991). However, "this does not imply that the employee must have substantially the same flexibility or freedom as he would if not on call, else all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject." (citations omitted). Id. at 677.

21

5 F. Supp.2d at 1165.

10.  In applying the above listed factors to the facts of this case, it is apparent that the call-pay policies and practices of West Park Hospital are in compliance with the FLSA, for the reasons noted below.

11.  West Park Hospital does not require that its employees remain on the premises while on call.  Plaintiffs are free to stay at home or at any other place of their choosing while they are on call as long as they are able to respond to the hospital clean, sober, and able to report to perform their duties at the hospital in a timely manner.

12.  West Park Hospital does not restrict or control where its employees may go while they are on call.  The only restriction is that the plaintiffs be able to report to the hospital within a reasonable time (15 minutes) of being called in.

13.  The average number of times the plaintiffs are called in per on-call shift is not unduly restrictive.  As noted above, the frequency of call backs for each of the plaintiffs is as follows:

|  |  |
|---|---|
| Linda Byrd | 0.45/shift |
| Nancy Easton | 0.84/shift |
| Korlynn Anderson | 0.72/shift |

22

Theresa Livermore          0.78/shift

David Van Auken            1.10/shift

The collective average frequency of all plaintiffs is 0.77/shift.

14.  Courts examining the average number of call backs have held that similar frequencies were not unduly restrictive.  See e.g., Reimer v. Champion Healthcare Corp., 258 F.3d 720 (8th Cir. 2001) (one-quarter of nurses were called in more than once during their scheduled on-call times); Dinges v. Sacred Heart St. Mary's Hospitals, Inc., 164 F.3d 1056 (7th Cir. 1999) (EMTs had less than a 50% chance of being called in during any 14-16 hour time period); Berry v. County of Sonoma, 30 F.3d 1174 (9th Cir. 1994), cert. denied 513 U.S. 1150) (1995) (coroners received death report approximately every 6.45 hours); Armitage v. City of Emporia, 982 F.2d 430 (10th Cir. 1991) (police detectives called into work one or two times per week); Burnison v. Memorial Hospital, Inc., 80 F. Supp. 549 (D. Kansas 1993) (frequency of callbacks for EMTs was between 1.1 and 1.4 callbacks per shift); Cleary v. ADM Milling Co., 827 F. Supp. 472 (N.D. Ill. 1993) (callbacks for maintenance employees averaged 1.25 per week).  Here, plaintiffs could expect, on average to be called out at most about 7 times per month of call, which is not excessive in the view of this Court.  There are instances in which employees were called in two or

23

three times in a given night, but these are offset by numerous occasions when they were not called back at all during on-call shifts.

15.  The call pay policy of West Park Hospital provides that the on-call employee must be able to respond within a reasonable time.  The plaintiffs' supervisor consistently has interpreted this response time to mean that the radiology technologists should respond within fifteen minutes.  Cody, Wyoming is a relatively small city and the driving time within the city is usually well within fifteen minutes.  The fifteen minute response time allows the on-call employees to engage in a wide variety of activities within the city limits.  In addition, the hospital has not enforced the fifteen minute callback period by imposition of any discipline.  Plaintiffs testified that they and other employees had failed to or could not meet the fifteen minute response guideline from their own residences. It was also clear that no discipline was ever administered to any radiology department employee for failing to report within fifteen minutes.

16.  Other courts examining this factor have determined that similar response times were not unduly restrictive.  See e.g., Reimer v. Champion Health Care Corp., 258 F.3d 720 (8th Cir. 2001) (nurses had to be able to report to hospital within twenty minutes); Dinges v. Sacred Heart St. Mary's Hospitals, Inc., 164 F.3d 1056 (7th Cir. 1999) (EMTs living in rural area were

24

required to arrive at hospital within seven minutes of receiving a page); Andrews v. Town of Skiatook, 123 F.3d 1327 (10th Cir. 1997) (EMT had to respond to the station within five to ten minutes); Berry v. County of Sonoma, 30 F.3d 1174 (9th Cir. 1994) *cert. denied* 513 U.S. 1150 (1995) (coroners were required to respond to pages within fifteen minutes; Armitage v. City of Emporia, 982 F.2d 430 (10th Cir. 1991) (police detectives required to respond to calls within twenty minutes); Norton v. Worthen Van Service, Inc., 839 F.2d 653 (10th Cir. 1988) (driver required to report within fifteen to twenty minutes); Burnison v. Memorial Hospital, Inc., 829 F. Supp. 549 (D.Kan. 1993) (EMTs required to respond within five minutes of receiving call).

17.  The response time required by West Park Hospital is similar to the response times required by many other hospitals in Wyoming. Weston County Memorial Hospital in Newcastle: 15-20 minutes; Ivinson Memorial Hospital in Laramie: 15 minutes; Converse County Hospital in Douglas: 15 minutes; Hot Springs Memorial Hospital in Thermopolis: 15 minutes. No evidence was presented indicating that any hospital had a reporting time of greater than thirty minutes. It also is apparent to this Court that most of the complaints plaintiffs have with respect to call would not be alleviated by a response time of thirty minutes or longer.

25

18. West Park Hospital allows its radiology technologists to freely trade on-call responsibilities in order to facilitate their own personal schedules. No prior supervisory approval is required and call is actually traded by plaintiffs and other department employees. Although plaintiffs noted a few instances in which they claimed it was difficult for them to trade call, they were in fact able to trade even in those instances.

19. West Park Hospital provides its radiology technologists with the use of a pager while the technologists are on call. The technologists are also allowed to use cellular telephones or to be notified on regular telephones if they so choose. There is no requirement that radiology technologists remain at home or any specified location while on call. Although the plaintiffs cited specific instances in which they claimed pagers did not work properly due to poor reception or operator error, the pagers were used and relied upon by a majority of the plaintiffs and other department employees as well. No West Park Hospital radiology department employee has ever been disciplined for failing to timely report to the hospital because of a pager problem.

20. The radiology technologists are allowed to use their time for their own purposes while they are on call. Although the plaintiffs complain that they are limited in the activities in which they can participate, they admit that they

26

have actually engaged in a wide range of personal activities while on call. Radiology technologists who have not joined the lawsuit have also testified that they were able to engage in a great range of personal activities while on call. Some of the plaintiffs have chosen to live at significant distances from the hospital, which does limit the time available to respond to a call. However, the hospital is not required to adjust its call response time to accommodate the employee's particular choice of residence.

21.    West Park Hospital has a policy specifically governing issues concerning an employee's being on call. Each of the plaintiffs received a copy of the policies, including the policy for call pay, when they began working for West Park Hospital. Furthermore, Korlynn Anderson, Linda Byrd, and David Van Auken have all resigned from West Park Hospital and then have returned to again work at West Park Hospital. Plaintiffs were all aware of the West Park Hospital policies with regard to call when they were hired.

22. Plaintiffs argue that the Court must make an intensive factual inquiry into the lifestyles of each of them and determine whether the call requirements at West Park Hospital have an impact upon the things they would choose to do if not on call. They claim that the Court must determine that they are working while on call for FLSA purposes if the Court determines that the call

27

requirements limit their personal pursuits.  The Court received a great deal of evidence concerning the impact of call on plaintiffs' chosen personal pursuits. However, the Court is not persuaded that the impact on the plaintiffs' preferred personal activities while on call or not on call must be considered as a determining factor.

23.  The argument made by plaintiffs in this case was rejected in Martin v. Ohio Turnpike Comm'n, 968 F.2d 606 (6th Cir. 1992).  In Martin v. Ohio Turnpike Comm'n, highway maintenance workers brought suit under the FLSA seeking overtime compensation for the time they were on call.  The district court granted summary judgment to the employer.  On appeal, the appellants contended that the district court erroneously concluded that the on call policy did not change the plaintiffs' lifestyles.  The Sixth Circuit's analysis in rejecting this claim is applicable to this case:

> We agree that the plaintiffs' affidavits and depositions are sufficient to establish an issue as to whether the on-call policy has changed the plaintiffs' use of their free time. Viewing that evidence in the light most favorable to the plaintiffs, a reasonable juror could find that many of the plaintiffs have given up or curtailed certain activities for fear of missing an emergency call.
>
> However, we find that the plaintiffs' evidence does not establish a genuine issue of material fact. The fact that some of the plaintiffs' activities have been affected by the policy is not sufficient to make the on-call time compensable. The plaintiffs must show

28

that the policy is so onerous as to prevent them from effectively using their free time for personal pursuits. That some of the plaintiffs' personal activities may be affected is not enough. The plaintiffs must establish the type of severe restrictions at issue in Cross and Renfro.

The plaintiffs have not provided any evidence to show how frequently they are called back. Without such evidence, a jury could not find that they are called back so frequently as to make effective use of their time impractical. The plaintiffs also have not established that the Turnpike's on-call system is unusually onerous. Unlike the employees in Cross, the plaintiffs need not listen to a radio all night. They need only respond to a telephone call or pager. If they need to leave home, they can call the Turnpike and give a number where they can be reached. Unlike the employers in Cross, Renfro, Bright, and several of the other on-call cases, the Turnpike does not require its employees to arrive within a certain time after being called. [footnote omitted] Thus, the plaintiffs' travel is not severely restricted.

The plaintiffs argue that several facts in the record establish that the Turnpike's policy is unreasonable. For example, the plaintiffs point to the testimony of a Turnpike official, who stated that, due to the possibility of malfunction, employees used pagers at their own risk. That official also testified that the Turnpike may not have allowed an employee to leave more than one alternate phone number where he or she could be reached.

This evidence does not establish that the Turnpike's on-call policy was especially burdensome. The fact that employees bore the risk of using pagers does not amount to an interference with the employees' ability to use their free time. Similarly, the restriction on the number of alternate phone numbers merely requires an employee to call in each time he or she changes location.

Finally, although the plaintiffs stated in their affidavits and

29

> depositions that they have given up certain activities, we note that many of them admitted that they still participate in numerous activities. Those admissions would preclude a finding that the plaintiffs are unable to use their time for their own pursuits. We therefore find that summary judgment against the plaintiffs' claim is appropriate.

Martin v. Ohio Turnpike Comm'n, 968 F.2d at 611-612 (footnote omitted).

24.  As in Martin v. Ohio Turnpike Comm'n, the plaintiffs here have not shown that they are unable to use their time on call for their own pursuits.  The policy has not been shown to be so onerous as to prevent them from effectively using their free time for personal pursuits or that it is unreasonable or especially burdensome.

25.  Plaintiffs' contentions would yield some peculiar results.  Employees whose avocations are computer games, crossword puzzles, knitting or translating ancient manuscripts would not be entitled to compensation, because they could interrupt these activities to respond to a call.  Employees whose avocations are distance running, kayaking, horseback riding, or other activities which would make it impossible to report when called would be entitled to compensation.  The law should not, and does not, permit such inconsistent results.

26.  This case is not substantially different than that described by the

30

district court in Pilkenton v. Appalachian Regional Hospitals, Inc., 336 F. Supp.

334 (D. W.D. Va. 1971).   The Pilkenton plaintiffs, also hospital employees

including an x-ray technologist and laboratory technician, involved claims

comparable to those brought by the plaintiffs in this case.   In that case, the

plaintiffs were on call or on standby.   The court noted that their freedom to

engage in whatever activities they chose was circumscribed in two respects.

> First, within approximately twenty minutes of receiving a call, the
> employee had to report to the hospital.   Secondly, each plaintiff
> was required to leave at the hospital a telephone number where he
> or she could be reached or where a message could be relayed to
> him of her.   In all other respects the plaintiffs' time was their own.
> They could go shopping, read, watch television, go to the movies,
> visit friends, entertain friends, travel to surrounding towns, go to
> restaurants, and eat and sleep at their convenience.   In particular,
> Pilkenton testified that he had gone to ball games, visited his
> parents in Norton, a nearby city, four miles or so from the hospital,
> and that he slept very soundly during his standby time.   Pilkenton,
> in fact, lived in Norton during a part of the time about which he
> complains.   He recalled that most of the calls were received before
> his normal bedtime.   Mrs. Wampler testified that during on-call
> duty, she had watched television, sewed, done housework, sat
> outside in the sun, shopped, entertained friends, courted her
> husband to be, and visited in towns five and ten miles away.

Pilkenton v. Appalachian Regional Hospitals, Inc., 336 F. Supp. at 336.   That

court continued:

> . . . Plaintiffs Pilkenton and Wampler were not only not requested
> to remain at the hospital or any particular place, they were able to
> spend their time largely as they chose.   On the other hand,

31

> plaintiffs' on-call time was not completely unrestricted. Their
> activities were limited to a twenty minute radius of the hospital and
> they spent, roughly calculated, an average of a little more than an
> hour per shift working in the hospital. However, under <u>Armour</u> and
> <u>Swift</u>, the test is not whether an employee's leisure is curtailed at
> all, but rather whether it is so restricted that it is not spent
> primarily for the employee's benefit. Consequently, in view of all
> the facts and circumstances in the case at hand, the court finds as
> a fact that the on-call time was spent predominantly for the benefit
> of the plaintiffs rather than for the benefit of their employer, and
> that plaintiffs were waiting to be engaged rather than engaged to
> be waiting.

<u>Id.</u>, 336 F. Supp. at 338. In the instant case, the same result obtains. The

Court finds these plaintiffs were waiting to be engaged while on call, rather than

engaged to be waiting. The time spent on call is therefore not compensable

under the FLSA.

27. In order to recover liquidated damages under the FLSA, plaintiffs first

need to prove a violation of the Act. 29 U.S.C. § 216(b). If they had

succeeded in that proof, defendant West Park Hospital would have had to prove

that it acted in good faith. 29 U.S.C. § 260.

28. Plaintiffs have not provided sufficient proof of a violation of the FLSA

and thus, are not entitled to recover liquidated damages of the defendant.

29. The Court finds and concludes that plaintiffs are not entitled to

recover anything of defendant West Park Hospital. Judgment shall be entered

32

in favor of defendant West Park Hospital.

30.    Defendant West Park Hospital is entitled to recover its costs, pursuant to Fed. R. Civ. P. 54(d)(1), upon the filing of a bill of costs with the Clerk of the Court within ten (10) days of the date of entry of Judgment, with the parties to bear their own attorney's fees and expenses.

Accordingly, it is hereby

**ORDERED** that judgment should be entered in favor of defendant West Park Hospital on all claims asserted by plaintiffs against defendant West Park Hospital in the above captioned proceeding.

**Judgment shall be entered accordingly.**

Dated this ___4th___ day of ___April___ 2006.

UNITED STATES DISTRICT JUDGE

33